(No. 37981.—

THE PEOPLE *ex rel.* JESS ABNER, JR., Petitioner, *vs.* CHARLES F. KINNEY *et al.,* Respondents.

*Opinion filed January 22, 1964.*

THOMAS P. SULLIVAN, of Chicago, (THOMPSON, RAYMOND, MAYER & JENNER, of counsel,) for petitioner.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and RICHARD A. MICHAEL, Assistant Attorneys General, of counsel,) for respondents.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an original petition in this court for writ of *mandamus* directed to respondents Charles F. Kinney, chairman, and Henry S. Wise, James C. Craven, Louis Zahn and Douglass R. Turner, associate members of the Parole and Pardon Board of the Department of Public Safety of the State of Illinois, to compel respondents within a reasonable time to grant petitioner, Jess Abner, Jr., a hearing to determine whether he shall be released on parole from the sentence imposed on him in 1954 as required by section 1 of the Sentence and Parole Act. Ill. Rev. Stat. 1961, chap. 38, par. 801.

Petitioner was sentenced to imprisonment for from 15 to 20 years in 1954. He has served the minimum term of his sentence, less good time credit. Section 1 of the Sentence and Parole Act provides: "Every person sentenced and committed to the penitentiary shall, in the discretion of the Parole and Pardon Board, be eligible to parole under rules and regulations adopted by the Parole and Pardon Board, such paroles to be as follows: * * * A person sentenced for an indeterminate term shall not be eligible for parole until he has served the minimum limit fixed by the court, good time being allowed as provided by law."

The "good time" regulations promulgated by the Department of Public Safety provide that a person serving an indeterminate sentence with a minimum of 15 years is eligible to receive a parole hearing after he has served 8 years and 9 months.

Petitioner was eligible to receive a hearing before the

Parole Board on April 3, 1963, and he applied for such a hearing. On April 12, 1963, petitioner received a letter from the clerk of the Parole and Pardon Board that his case was continued to make grade. In response to a letter written by petitioner's counsel to the superintendent of the Parole Board he received a letter from such superintendent that under date of January 27, 1955, petitioner was demoted to grade E under the Progressive Merit System and again to Grade E on January 9, 1963, and that he would appear when he regained Grade A for the proper length of time. Petitioner has never had a hearing before the Parole Board.

The refusal to grant petitioner a hearing is based upon Rule 5 of the rules of the Parole and Pardon Board which provides: "Only those prisoners who are in 'Grade A,' as determined by the wardens of the respective institutions under the 'Progressive Merit System,' and shall have been in 'Grade A' for three consecutive months, at least ten days prior to the date of the subcommittee sessions at the several institutions, shall be entitled to consideration for parole." This rule was promulgated under section 7 of the Sentence and Parole Act (Ill. Rev. Stat. 1961, chap. 38, par. 807) which authorizes the Board to establish rules and regulations not inconsistent with the act under which prisoners may be allowed to go on parole.

Rule 4 of the rules and regulations of the Parole Board in part reads: "No prisoner will be given a hearing who is out of grade, in isolation or deadlock. His case will be continued until his release from the aforementioned unit or until he is in Grade the proper length of time."

A similar rule has been adopted by the Department of Public Safety which provides in part: "The inmate must be in A grade at least three months and have served his minimum sentence, less 'Good Time', before he will be eligible to a parole hearing by the Parole and Pardon Board."

Petitioner contends respondents have no authority to impose conditions precedent to parole hearings in addition to those established by section I of the Sentence and Parole Act, nor to delegate to officials of the several prisons the power to determine that certain prisoners who have served the requisite portions of their sentences shall not be given a parole hearing. The practice of refusing to permit prisoners who are not in Grade A to have parole hearings has been followed by the Parole Board for many years.

The Progressive Merit System is as follows: There are five grades, A through E. Every person sentenced to the penitentiary is automatically placed in Grade C, the neutral grade. If the prisoner's behavior is "satisfactory," he is promoted to Grade B in 3 months, and to Grade A in another 3 months. Thereafter, he may be reduced in grade upon order of the Prison Merit Staff, which at Stateville is composed of the warden, three senior captains, two assistant wardens, and a merit staff clerk. The Merit Staff may, if it chooses, reduce the prisoner to any grade it deems fit. The prisoner has no opportunity to be heard, nor is there any appeal.

Examples of prison rules, a violation of which may result in a disciplinary report and a reduction in grade are: having other than the designated number of blankets in cell, covering of any type on dresser, singing or whistling in cell, talking while bathing, placing shoes on bench while bathing, taking more food than can be eaten (edibles are not to be left on plate), discussion in mail of subjects that are controversial or of the institution or its personnel, and other such rules.

The Attorney General on behalf of respondents contends that parole is a constitutional function of the Governor and any interpretation of the Sentence and Parole Act which would limit the Governor's discretion

or vest such discretion in the Parole Board would render that act unconstitutional. It is contended that the parole provisions of the Sentence and Parole Act do not vest any rights in a prisoner but are merely suggestions for an orderly manner in which the Governor may exercise his parole discretion.

With these contentions we cannot agree. Section 13 of article V of the Illinois constitution gives the Governor "power to grant reprieves, commutations and pardons, after conviction." This does not include the power to grant paroles. Parole is a part of the legislative function of establishing a penological system and providing rules to govern the care and discipline of inmates. Parole does not end or in any way affect the prisoner's sentence but is a correctional device authorizing service of the sentence outside the penitentiary. Pardons, reprieves and commutations completely and irrevocably release an inmate from custody and supervision.

The Parole and Pardon Board has two separate and distinct functions. One is to act as the Governor's agent in hearing applications for executive clemency, in which the Board has no power to grant a pardon, reprieve or commutation, but merely to submit a recommendation to the Governor, who is free to accept or reject the recommendation. The other is when it sits as an administrative body with the power to make final decisions in parole matters. The latter power has been granted it by the legislature. These distinctions were recognized in *People ex rel. Kubala* v. *Kinney,* 25 Ill.2d 491 (1962), when we said at 492-493: "Under our system of government the legislature * * * has the exclusive power to provide a penological system, (*People ex rel. Latimer* v. *Randolph,* 13 Ill.2d 552,) and to establish rules and regulations for the government and discipline of the inmates. (*George* v. *People,* 167 Ill. 447.) This court has held that allowing

an inmate to go outside of the prison on parole falls within the legislature's power relating to prison government and discipline, * * *."

The first Illinois Parole Act was passed in 1895; its constitutionality was upheld several years later in 1897, (*George* v. *People*, 167 Ill. 447). That act and all subsequent parole acts contain provisions relating to procedures before the Board, including the time for eligibility to apply for parole. These provisions have always been viewed as creating mandatory duties on the Board. The Parole Act specifically provides the number of years which a prisoner must serve before he becomes eligible for parole (section 1 of the Sentence and Parole Act). Neither the Parole Board nor the Department of Public Safety can by rules change the statutory provisions of eligibility for parole. When a prisoner becomes eligible for parole, the Parole Board is under a mandatory duty to hear his application for parole. We so held in *People ex rel. Kubala* v. *Kinney*, 25 Ill.2d 491.

In *United States ex rel. Hancock* v. *Pate*, U.S. Dist. Ct. No. Dist. of Illinois, Eastern Div., No. 63C1205 (November 7, 1963) on argument of a motion to dismiss a complaint for declaratory judgment and for injunctive relief, it recently was held in denying the motion to dismiss that the action of the warden in placing prisoner Hancock in Class E as the result of a fracas in which the prisoner was defending himself, raised Federal constitutional questions under the fourteenth amendment (due process) and under the provision against cruel and unusual punishment when such action barred or postponed the consideration of parole in normal course, trespassing upon the powers granted to the Pardon and Parole Board of Illinois.

The operation of respondents' Rule 5 is an unauthorized delegation of power by the Parole Board to the wardens of the several Illinois State Penitentiaries, since the determination of whether a prisoner is Grade A is made by them and

their staff. This in effect makes a condition precedent to the parole and in another aspect gives a veto to the wardens over the discretionary powers of the Parole Board on granting paroles. Section 1 of the Sentence and Parole Act requires that this discretion be exercised by respondents. There is no authorization for the delegation of this discretionary power.

*Mandamus* is an appropriate remedy to compel a public officer to exercise the discretion vested in him. (*Fergus* v. *Marks,* 321 Ill. 510, 517.) Accordingly, the writ of *mandamus* should issue.

*Writ awarded.*