Alvin P. TONEY, Petitioner-Appellee,

v.

Gayle M. FRANZEN, et al.,
Respondents-Appellants.

No. 80–2617.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1981.
Decided Aug. 30, 1982.

Randell S. Morgan, Strock & Kinate, Ltd., Pontiac, Ill., for petitioner-appellee.

Michael V. Accettura, Springfield, Ill., for respondents-appellants.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL *, Senior District Judge.

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner filed for a writ of habeas corpus in federal court alleging that his period of incarceration has exceeded the term of his sentence. The district court agreed and granted the writ. On appeal respondents contend that petitioner failed to exhaust state remedies as required by 28 U.S.C. § 2254(b). We affirm.

I

On March 2, 1976, petitioner was arrested on armed robbery and other charges of which he later was convicted and sentenced by the Circuit Court of Cook County, Illinois to serve a prison term of seven years to seven years and one day. While in custody, he pleaded guilty to a previously pending charge of attempted murder. The Circuit Court of Cook County, per Judge Garippo, entered an order dated September 24, 1979 sentencing petitioner to ten years for that offense with 2 years and 252 days credit for various time served in the county jail since his initial arrest on that charge in 1973.[1] Although unstated in the mittimus, the ten-year sentence was to run concurrently with petitioner's armed robbery sentence. *See* Ill.Rev.Stat. ch. 38, § 1005–8–4(a) (1978). In March 1980, petitioner's sentence on the armed robbery conviction expired.

Effective February 1, 1978, Illinois changed its system of awarding good conduct credit. The new law abolished the former system of combined statutory and compensatory good conduct credit, and in lieu thereof provided that "the prisoner shall receive one day of good conduct credit for each day of service in prison" and that "[e]ach day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court." Ill.Rev. Stat. ch. 38, § 1003–6–3(a)(2) (1979). In *Johnson v. Franzen*, 77 Ill.2d 513, 34 Ill.Dec. 153, 397 N.E.2d 825 (1979), the Illinois Supreme Court held that a prisoner serving an indeterminate sentence on February 1, 1978 was entitled under the new law to day-for-day credit for time served after that date. The court also stated that "the new system applies to both determinate and indeterminate sentences." *Id.* at 518, 34 Ill.Dec. 153, 397 N.E.2d 825.

In April 1980, petitioner sought a writ of habeas corpus in the Circuit Court of Livingston County, Illinois, alleging that his ten-year sentence had expired and seeking release from custody. Petitioner claimed that he was entitled to day-for-day good conduct credit in the amount of five years (one-half of his ten-year sentence) and credit for time previously served on his armed robbery conviction. Construing that petition as seeking a writ of mandamus,[2] the court held that the Department of Corrections was "required by law to recompute each prison inmate's good time on a day-for-day formula after February 1, 1978," and issued a mandamus order to that effect. The court, however, did not determine petitioner's release date and whether petitioner had been awarded adequate credit for time previously served in the county jail and on the concurrent sentence. Respondents received that order but concluded that it did not apply "inasmuch as *Johnson v. Franzen* applies only to indeterminate sentences." Brief for Respondents at 7a.

On June 12, 1980, petitioner sought habeas corpus relief in federal district court. Respondents strenuously objected to the court's "jurisdiction," arguing that peti-

---

1. The court gave credit for 68 days served following arrest in 1973 until released upon a finding of no probable cause, for 325 days served following arrest in 1974 until released upon grant of a motion to dismiss, and for 1 year and 224 days served since February 1978 when the dismissal was reversed.

2. Under Illinois law, habeas corpus is unavailable to remedy a failure on the part of the Department of Corrections to award sentence credits. *People ex rel. Harper v. Brantley*, 34 Ill.App.3d 807, 809, 341 N.E.2d 126, 127 (5th Dist. 1975); *see United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976); *cf. People ex rel. Titzel v. Hill*, 344 Ill. 246, 251, 176 N.E. 360, 363 (1931) (habeas corpus available where prisoner is held beyond his *maximum* sentence). Rather, mandamus is the proper remedy. *People ex rel. Abner v. Kinney*, 30 Ill.2d 201, 195 N.E.2d 651 (1964).

tioner had failed to exhaust available remedies in the proceedings which he commenced in the Circuit Court of Livingston County. Respondents also argued that, based on their interpretation of a corrected mittimus issued by petitioner's sentencing court on July 15, 1980,[3] petitioner's mandatory supervised release date was not until March 2, 1981.[4] Rejecting both arguments, the district court found that petitioner was entitled to release on mandatory supervised parole and granted the writ.[5]

## II

The exhaustion issue here has an unusual twist in that the state mandamus court did not adjudicate petitioner's entire claim and, to the extent it did rule, entered an order in favor of petitioner. Respondents' sole contention is that the exhaustion rule requires petitioner to return to the mandamus court and "complete" the proceedings. Respondents argue that petitioner must enforce the mandamus order by seeking a rule to show cause why respondents should not be held in contempt and, presumably, move the court to revise its judgment in order to obtain a complete adjudication of the issues. We assume that

these procedures are available to petitioner.[6]

### A

In 28 U.S.C. § 2254(b), Congress codified the principle, well-settled since *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must exhaust available state remedies before a federal district court may grant his petition for habeas corpus relief. *See Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The exhaustion doctrine is firmly rooted in considerations of federal-state comity:

The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts

---

**3.** On June 26, 1980, petitioner filed a motion with the sentencing court, requesting that the mittimus on his ten-year sentence be modified to reflect credit for time served on his concurrent sentence for armed robbery. The Circuit Court of Cook County, per Judge Suria, ordered that the previous sentencing orders "are to stand," that petitioner "is to receive sentence credit on all of the above charges from March 2, 1976, from which time [he] has been continuously in the custody of law enforcement officials," and that "this order is to be considered effective as of September 24, 1979." Shortly thereafter petitioner received a letter from the Department of Corrections informing him that, based on a custody date of March 2, 1976 and with five years good time credit, his mandatory release date is March 2, 1981.

**4.** This case is not moot because collateral legal consequences yet flow from the determination of petitioner's mandatory supervised release date. *See United States ex rel. Grundset v. Franzen*, 675 F.2d 870, 873 (7th Cir. 1982). The duration of petitioner's parole term will necessarily be affected. *Cf. Lane v. Williams*, —— U.S. — —, 102 S.Ct. 1322, 71 L.Ed.2d 508, (1982). We nevertheless assume that the Department of Corrections at least abided by the

mandatory release date it represented to this court and has since released petitioner on parole.

**5.** The court viewed Judge Suria's order as granting sentence credit from March 2, 1976, *in addition to* credit already received under Judge Garippo's order. Respondents construed the March 2nd date to *include* all credit previously awarded. The court said that petitioner's release date is either June 23, 1978, or February 2, 1980, depending on whether Judge Suria intended to supplant the 1 year, 224 days credit Judge Garippo gave for time served since February, 1978. *See* notes 1 & 3 *supra*.

**6.** State courts retain jurisdiction to revise their judgments where only part of the claims have been adjudicated, Ill.Rev.Stat. ch. 110A, § 304(a); *see Castro v. Chicago, Rock Island & Pac. R.R. Co.*, 83 Ill.2d 358, 47 Ill.Dec. 360, 415 N.E.2d 365 (1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981), and to enforce their orders by means of contempt, Ill.Rev.Stat. ch. 37, § 72.25; *see In re Baker*, 71 Ill.2d 480, 17 Ill.Dec. 676, 376 N.E.2d 1005 (1978).

apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Rose v. Lundy*, at ——, 102 S.Ct. at 1203 (citations omitted). Those concerns apply regardless of whether the petitioner seeks review of his conviction or internal prison administration. *Preiser v. Rodriguez*, 411 U.S. 475, 492, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973).

 The exhaustion requirement of 28 U.S.C. § 2254(b), however, is not a blind abdication of federal power but "reflects a careful balance between important interests of federalism and the need to preserve the writ as a 'swift and imperative remedy in all cases of illegal restraint or confinement.'" *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Recognized exceptions aside,[7] federal concerns of comity are satisfied if the State was given a fair *opportunity* to address the federal constitutional issue. Exhaustion does not require a prisoner to file repetitious applications in the state courts, *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971); *Brown v. Allen*, 344 U.S. 443, 449 n.3, 73 S.Ct. 397, 403 n.3, 97 L.Ed. 469 (1953); nor does the mere possibility of success in additional proceedings bar federal habeas corpus relief, *Francisco v. Gathright*, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974); *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). Similarly, in *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), the Supreme Court held that "once a federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." The Court reaffirmed the "fair opportunity" concept in *Smith v. Digmon*, 434 U.S.

332, 333, 98 S.Ct. 597, 598, 54 L.Ed.2d 582 (1978), by declaring that "[i]t is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn on whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in the petitioner's brief in the state court. . . ." The Court did not require the petitioner to pursue available procedures to present the question to the state court a second time. The rule of exhaustion thus requires only that States be given "the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording*, 404 U.S. at 250, 92 S.Ct. at 408. This includes an opportunity for review by the highest court in the state. *See Brown, supra; Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).

### B

 Petitioner pursued the proper state remedy and "fairly presented" his claims. A petition for a writ of mandamus in state court must be exhausted where that procedure was designed to protect the rights asserted. *United States ex rel. MacBlain v. Burke*, 200 F.2d 616, 618 (3d Cir. 1952); *see also Brown v. Estelle*, 530 F.2d 1280, 1283 (5th Cir. 1976). Under Illinois law, mandamus is clearly the appropriate procedure to compel the Department of Corrections to set petitioner's mandatory release date in accordance with law. *People ex rel. Abner v. Kinney*, 30 Ill.2d 201, 195 N.E.2d 651 (1964).

 A federal habeas corpus petitioner has "fairly presented" a claim to a state court if he has clearly informed the state court of the factual basis of that claim and has argued to the state court that those facts constituted a violation of the petitioner's federal constitutional rights. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981);

---

7. Because we find that petitioner exhausted his state remedies, we need not address the district court's alternative ruling that a rule to show cause is an "ineffective remedy." To the extent that the district court concluded that additional state remedies would be ineffective because this case involves "a clear constitutional violation," we note the Supreme Court's recent decision in *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981).

*Moore v. Duckworth*, 581 F.2d 639, 642–45 (7th Cir. 1978), *aff'd*, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979). It is sufficient that the "substantial equivalent" or "substance" of the federal habeas corpus claim has been presented. *Picard*, 404 U.S. at 278, 92 S.Ct. at 513. Concerns of federal-state comity, however, favor a cautious application of this test. *Johnson v. Metz*, 609 F.2d 1052, 1054 (2d Cir. 1979).

In federal district court petitioner alleged that he "is some 18 months over due [sic] to be discharged" and referred to copies of the mandamus order and Judge Garippo's order. His petition to the mandamus court similarly alleged that he was being held beyond his mandatory release date in violation of, *inter alia*, the Eighth and Fourteenth Amendments of the United States Constitution. Petitioner therein contended that he had received a ten-year sentence, and was entitled to five years day-for-day good conduct credit under the new Illinois statute and four years and nine months credit for time served on a concurrent sentence prior to receiving the ten-year sentence.[8] Petitioner also attached a copy of Judge Garippo's order. He stated that "[i]t is upon these satisfied sentences petitioner seeks his liberty." A pleading entitled "Writ of Habeas Corpus" filed along with that petition analyzed the new Illinois statute and concluded that "if given his good conduct (day for day) credits as of Feb. 1, 1978 that he would be one (1) year and nine (9) months over due [sic] of his maximum sentence of 10 years. . . . We can reach no other conclusion that your petitioner is enti-

tled to day for day good conduct credit as well as all statutory and compensatory time credit for all time served." The mandamus court addressed only the claim to day-for-day good time credit.

 While the mandamus court understandably may have had trouble with the inartfully drawn *pro se* petition, we believe that the petition, when reasonably construed, asked the court to adjudicate his mandatory release date and award petitioner all sentence credit to which he was entitled, not merely good conduct credit. The relief sought and claims raised in state court were substantially equivalent, if not virtually identical, to the content of the petition filed in federal district court.[9]

 *Picard* and *Smith* show that the burden is on the prisoner to raise the federal constitutional claim in state court and, if the court rules against the prisoner, take the usual steps necessary to present that claim on appeal. The exhaustion rule imposes no further obligation on the prisoner. At that point, principles of federalism have been adequately accommodated. A state court that ignores an issue, enters an order that falls short of the relief requested, or leaves room for future litigation over the meaning of its order, will not thereby bar an unsatisfied prisoner from seeking habeas corpus relief in the federal court. "Comity requires sensitive accommodation, and not simply slavish adherence, to the interests of the states." *Carter*, 677 F.2d at 443.

---

8. Apparently, petitioner counted his time in county jail, for which Judge Garippo gave him credit, as part of the time he served on the concurrent sentence for armed robbery.

9. Although the sentencing court issued an order correcting the original mittimus to reflect the concurrent sentence, *see* notes 1, 3 & 5 *supra*, and that order was not entered until after the mandamus order issued and the federal habeas action was filed, respondents do not contend that the issuance of that corrective order requires petitioner to return to state court to litigate its meaning. The mandamus court had the power and opportunity to determine the amount of credit due as a result of the prior armed robbery sentence and to calculate

petitioner's release date accordingly. *See* Ill. Rev.Stat. ch. 38, § 1005–8–4(a) (sentences shall run concurrently unless specified otherwise by the sentencing court); *People v. Logan*, 23 Ill. App.3d 41, 318 N.E.2d 94 (4th Dist. 1974) (order too vague to be construed as imposing consecutive sentences). The intervening order of Judge Suria did not change the character of petitioner's claim such that he should present it again to the state courts. *See Francisco v. Gathright*, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974); *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); *cf. Mabry v. Klimas*, 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 897 (1980); *Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975).

Indeed, section 2254(c) states that a petitioner has not exhausted state remedies "if he has the right under the law of the State to *raise*, by any available procedure, the question presented." 28 U.S.C. § 2254(c) (emphasis added). That provision requires nothing more than that the federal question be presented to the state courts and imposes no obligation to move a state court to revise its judgment. Nor does it require a successful prisoner to secure by supplemental coercive action rights already won in state court.

Here, the state mandamus court had a fair opportunity to adjudicate conclusively petitioner's entire action. The court, in our view, should have addressed petitioner's other claims: whether the Department of Corrections had deprived petitioner of credit for time previously spent in county jail and on the concurrent sentence for armed robbery. It also should have determined petitioner's mandatory release date or at least the total amount of credit to be awarded against petitioner's ten-year sentence. Instead, the court merely ordered recomputation in accordance with *Johnson v. Franzen*. In fact, the opinion of that court appears to be a stock opinion consisting of a blanket discussion of the new Illinois statute on good conduct credit and containing no hint that the court had given individual consideration to facts of petitioner's case. Two other orders entered by that court in unrelated cases have come to our attention—each is a verbatim copy of the order entered in this petitioner's cause. No doubt the state court was swamped with recomputation problems and was forced to standardize the treatment of them. The court's failure to render a complete adjudication of all claims furthermore effectively blocked state appellate review. Ill.Rev. Stat. ch. 110A, § 304. Even if the state appellate court were to construe petitioner's action as raising only a claim to good conduct credit, thus treating the trial court's

order as a final judgment, it is not petitioner's obligation to appeal a ruling that is favorable to him.

We recognize that state trial courts retain jurisdiction to revise partial judgments and to enforce their orders, *see* note 6 *supra*, and that federal courts should not rule on an application for the writ where to do so would "disrupt the orderly functioning of state judicial processes," *Braden*, 410 U.S. at 491, 93 S.Ct. at 1127. But we do not believe that technical retention of jurisdiction necessarily constitutes the type of pending inactive state proceeding that requires abstention. A state prisoner is entitled to assume that the state trial court will render a conclusive determination of all claims fairly presented and that the respondent will comply with the orders of that court. It should be unnecessary for a prisoner, who is often uneducated in the niceties of judicial procedure and unrepresented by counsel at that stage, to figure out what to do when he is dissatisfied with a favorable, yet inconclusive or incomplete state court decision, or when he has obtained an apparently favorable judgment but no results.[10] *See Dennis v. Solem*, 522 F.Supp. 698, 700 (D.S.D.1981). This is not a case where the state court's judgment specifically reserved decision on part of the claims or on the question of compliance to await further argument or action by the respondent. *Cf. id.* at 699 (state court ordered parole board to file findings and conclusions as to the determination of the petitioner's sentence, and the order stated that the "court may consider the entry of an Order releasing [petitioner] as a possible remedy upon non-compliance with this Order"). The mandamus court's order does not indicate that further judicial action is contemplated—*i.e.*, that the state proceeding is truly "pending." There will be time enough to review that situation should it ever arise. As is evidenced by his response

10. There is no evidence that respondents returned to state court to show compliance with the mandamus order. Under Illinois law, the only proper return to a peremptory writ of mandamus is a certificate of compliance without delay. *People ex rel. Illinois Midland Ry. Co. v. Barnett*, 91 Ill. 422, 434 (1879); *People v. County of Jefferson*, 108 Ill.App.2d 41, 44–45, 246 N.E.2d 704, 706 (5th Dist. 1969).

to question 14 on his petition, *see* 28 U.S.C. foll. § 2254 (Model Form for Use in Applications for Habeas Corpus), petitioner also perceived the state proceedings as no longer pending.

### III

For the foregoing reasons, we conclude that petitioner has exhausted his state remedies and affirm the decision of the district court.[11]

AFFIRMED.

---

11. Respondents do not seek review of the merits.

