NO. 4-04-0207

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE STATE BOARD OF ELECTIONS,

          Plaintiff-Appellant
,

          v.

MARK SHELDEN, in His Official Capacity as County Clerk of Champaign County, Illinois,

          Defendant-Appellee
.

)

)

)

)

)

)))

  Appeal from

  Circuit Court of 

  Champaign County

  No. 03MR151

  Honorable

  John G. Townsend, 

  Judge Presiding.

______________________________________________________________

JUSTICE TURNER delivered the opinion of the court:

In March 2003, plaintiff, the State Board of Elections (Elections Board), filed a complaint for 
mandamus
 against Mark Sheldon, in his official capacity as the county clerk of Champaign County, seeking an order requiring Shelden to furnish and release the telephone numbers of voters registered in Champaign County to the Elections Board.  After a bench trial, the trial court denied in part and granted in part the Elections Board's request for 
mandamus
.

The Elections Board appeals, contending the trial court erred by not requiring Shelden to also submit voters' telephone numbers that were submitted to Shelden by the voters on paper voter-registration cards and change-of-address forms after May 29, 2002, but not entered into the voter's computer-based registration file.  We note Shelden has not cross-appealed the court's partial grant of the 
mandamus
 complaint.  We affirm in part and reverse in part.  

I. BACKGROUND

In May 2002, Shelden stopped including a voter's telephone number in the voter-registration information that he furnished to the Elections Board.  On June 4, 2002, Shelden issued a press release stating he would no longer keep track of phone numbers in his voter files and would delete all numbers already in the system.  This way political parties and candidates could not obtain voters' phone numbers through his office or from the Elections Board.  Shelden explained he had received complaints from voters about their telephone numbers being available and felt political parties and candidates have been harassing voters.  In a letter dated June 17, 2002, William D. McGrath informed the Elections Board of Shelden's press release and questioned the legality of his actions.  In July 2002, the Elections Board held a meeting to discuss McGrath's letter, at which both McGrath and Shelden spoke about the issue.

In September 2002, the Elections Board determined the voter-registration information submitted by Shelden was noncompliant because it lacked the voters' telephone numbers.  In December 2002, A.L. Zimmer, the Elections Board's general counsel, sent Shelden a letter, informing him that his last data submission was noncompliant since it lacked telephone numbers and requesting compliance by December 26, 2002.  In February 2003, the Illinois Attorney General's office and Shelden exchanged letters regarding Shelden's noncompliance.  

In March 2003, the Elections Board filed its compliant for 
mandamus
, requesting the trial court to enter an order directing Shelden to furnish and release to it the telephone numbers of voters registered after May 1, 1990, and for all registered voters irrespective of registration date, if such information is available on the voter-registration card submitted by the voter.  In April 2003, Shelden filed a motion to dismiss, contending the Elections Board had already deemed his data submissions compliant and reimbursed him for his submissions.  After holding a hearing, the court denied Shelden's motion to dismiss.  Shelden then filed an answer, asserting the following affirmative defenses:  (1) the Elections Board could not contest the adequacy of his data submissions because it had already deemed them compliant; (2) the Elections Board was also barred from contesting compliancy because of a statement made by one of its employees indicating Shelden did not have to furnish telephone numbers outside of a computerized registration file; and (3) if granted, the relief sought by the Elections Board would create public disorder and confusion because the Elections Board accepts data submissions from other counties that do not include voters' telephone numbers. 

In December 2003, the trial court held a bench trial on the Elections Board's complaint.  In January 2004, the court entered a written order, granting the complaint in part and denying it part.  Specifically, the court concluded the voter records at issue could be divided into the following three categories: (1) computer records of telephone numbers that were deleted from the May 2002 submission; (2) telephone numbers not included in computerized voter-registration files subsequent to the May 2002 submission, whether on paper records or in separate computer files that are not the voter-registration files; and (3) telephone numbers not submitted in May 2002 because they were deleted based on a voter's request.  The court then granted a writ of 
mandamus
 as to the first category of records because the records were "available" within the meaning of the law.  However, the court denied a writ as to the other two categories because the Elections Board had not sought relief as to the third category and the law does not impose a clear duty on Shelden to submit the records in the second category.  Specifically, the court found the law does not impose a clear duty on Shelden to collect telephone numbers, to include them in the computerized record, and then to submit them to the Elections Board in the voter-registration file.  The court also denied all of Shelden's affirmative defenses.

This appeal followed.

II. ANALYSIS

The Elections Board asserts the trial court erred by not granting a writ of 
mandamus
 for the second category of records, which is those paper or computer records containing voter telephone numbers that are not part of the computerized voter-registration file. 

A court may only grant the extraordinary remedy
 of  
mandamus
 relief to direct a public official to perform a ministerial duty that does not involve the official's exercise of judgment or discretion.  Thus, to obtain 
mandamus
 relief, a petitioner must demonstrate (1) a clear right to the requested relief, (2) the respondent's clear duty to act, and (3) the respondent's clear authority to comply with the terms of the writ.  
Hadley v. Ryan
, 345 Ill. App. 3d 297, 301, 803 N.E.2d 48, 52 (2003).  Generally, a reviewing court will only reverse a trial court's decision to grant or deny 
mandamus
 when it is against the manifest weight of the evidence or where the court abused its discretion.  
Durbin v. Gilmore
, 307 Ill. App. 3d 337, 339, 718 N.E.2d 292, 294 (1999).  However, where the court's judgment turns solely on a statute's construction, which is a question of law, our review is 
de
 
novo
.  
Villarreal v. Village of Schaumburg
, 325 Ill. App. 3d 1157, 1161, 759 N.E.2d 76, 80 (2001).  The issue that this case presents involves the construction of several sections of the Election Code (10 ILCS 5/1 through 30 (West 2002)), and thus our review is 
de
 
novo
. 

As the trial court astutely noted, the statutes pertaining to the issue at hand "are not a model of clarity."  Thus, we will begin by setting forth the applicable statutes and regulations.

Section 4-8 of the Election Code (10 ILCS 5/4-8 (West Supp. 2001)) is a lengthy provision that addresses many aspects of voter registration and the county clerk's duty to furnish information to the Elections Board.  The blank forms for the registration of electors are known as registration-record cards.  10 ILCS 5/4-8 (West Supp. 2001).
  Section 4-8 requires a voter-registration card to contain the following information and any other information the county clerk may think is proper to require for the applicant's identification:  name, sex, residence, the term of residence in Illinois and the precinct, nativity, citizenship, the date of application, age, any physical disability of the applicant that would require assistance in voting, the county and state in which the applicant was last registered, the voter's signature, and the deputy registrar's or registration officer's signature.  10 ILCS 5/4-8 (West Supp. 2001).

Sections 4-8.03 and 4-33(a) of the Election Code give the Elections Board the authority to design the registration-record card for both counties that have adopted a computer-based registration file and those that have not.  10 ILCS 5/4-8.03 (West 2000); 10 ILCS 5/4-33(a) (West 2002).
  The legislature has amended section 4-33 since the controversy in this case arose, but the new statute still gives the Elections Board the authority to design the registration record.  See 10 ILCS 5/4-33(a) (West Supp. 2003).  Section 4-8.03 and the former section 4-33(a) mandated that the registration-record card contain "a box for the applicant's telephone number, if available," and
 required the election authorities with a computerized system and those without to use the card.  10 ILCS 5/4-8.03 (West 2000); 10 ILCS 5/4-33(a) (West 2002).
  The current version of section 4-33(a) still requires the election authorities to use the Election Board's registration-record cards but no longer mandates a box be provided for the applicant's telephone number.  See 10 ILCS 5/4-33(a) (West Supp. 2003). 
 

Section 216, exhibit A, of Title 26 of the Illinois Administrative Code (26 Ill. Adm. Code §216 exhibit A (Conway Greene CD-ROM March 2002)) sets forth the Illinois voter-registration application designed by the Elections Board, which provides a space for the applicant's telephone number but lists the term "optional" next to "telephone number."  The application states it can be used to register to vote, to change an address on the voter-registration record, or to change a name.  26 Ill. Adm. Code §216 exhibit A (Conway Greene CD-ROM March 2002)
.
  The current version of exhibit A still contains a space for an applicant's telephone number.  See 26 Ill. Adm. Code §216 exhibit A (Conway Greene CD-ROM, June 2003); 21 Ill. Reg. 4610, 4625 (adopted March 31, 1997)
.

Section 4-33(b) of the Election Code (10 ILCS 5/4-33(b) (West 2002)) provides election authorities "may develop and implement a system to prepare, use, and maintain a computer-based voter[-]registration file that includes a computer-stored image of the signature of each voter."  Such a file "may be used for all purposes for which the original registration cards are to be used," but the election authority 
must maintain at least one copy of the original registration cards.  10 ILCS 5/4-33(b) (West 2002).  However, the electronic file is the master file.  10 ILCS 5/4-33(b) (West 2002).
   

If an election authority decides to place voter-registration information into an electronic data-processing format, section 4-8 of the Election Code mandates that at certain prescribed times of the year, the county clerk must provide updated copies of computer tapes, computer discs, or other electronic data-processing information containing voter-registration information to the Elections Board in a form prescribed by the Elections Board.  10 ILCS 5/4-8 (West Supp. 2001).
  Registration information includes, but is not limited to, the following:  "name, sex, residence, telephone number, if any, age, party affiliation, if applicable, precinct, ward, township, county, and representative, legislative[,] and congressional districts."  10 ILCS 5/4-8 (West Supp. 2001).  Additionally, the election authorities' duty to furnish the above information is nondiscretionary.
  10 ILCS 5/4-8 (West Supp. 2001).
     

Section 4-8 of the Election Code also grants the Elections Board authority to promulgate regulations "to ensure uniformity throughout the State in electronic data processing of voter[-]registration information."  
10 ILCS 5/4-8 (West Supp. 2001).  Those regulations must specify, but need not be limited to, "uniform medium, communications protocol[,] and file structure to be employed by the election authorities of this State in the electronic data processing of voter[-]registration information."  10 ILCS 5/4-8 (West Supp. 2001).
  Election authorities that utilize electronic data processing of voter-registration information must comply with those regulations on and after May 15, 1988.  10 ILCS 5/4-8 (West Supp. 2001).

The Elections Board has enacted one regulation to implement section 4-8 of the Election Code.  Section 207.110 of Title 26 of the Illinois Administrative Code (26 Ill. Adm. Code §207.110 (Conway Greene CD-ROM March 2002)) provides, 
inter
 
alia
, (1) the electronic data-processing information that contains voter-registration information that must be furnished for all registered voters, (2) the information that may be furnished, and (3) the format for furnishing such information.  Under subsection (e) of that section (26 Ill. Adm. Code §207.110(e) (Conway Greene CD-ROM March 2002))
, the telephone numbers of "a voter registered after May 1, 1990, and for all registered voters, irrespective of date of registration, if available" must be furnished. 
 Appendix B provides the format for furnishing information, including optional information, and notes where a voter's telephone number is to be entered.  26 Ill. Adm. Code §207 app. B (Conway Greene CD-ROM March 2002).

The Elections Board contends the above statutory provisions require Shelden, as the county clerk, to provide a voter's phone number to it if the voter provides a phone number on the registration-record card.  Shelden asserts the provisions indicate that, as the county clerk, he has the discretion to decide whether to submit a voter's telephone number to the Elections Board.

In addressing the parties' arguments, we further break down category two into the following two parts:  (1) those telephone numbers stored in computer files that are not voter-registration files and (2) those telephone numbers contained only on paper registration cards.

A. Telephone Numbers in Computer Files

Section 4-8 of the Election Code expressly imposes a nondiscretionary duty on the county clerk to furnish the Elections Board with a copy of any electronic data-processing information containing voter-registration information, which includes the voter's "telephone number, if any."  10 ILCS 5/4-8 (West Supp. 2001).  Shelden contends the "if any" language means it is in his discretion whether or not to furnish voters' telephone numbers.  The Elections Board asserts the "if any" language refers to the fact a voter applicant does not have to provide a telephone number to register to vote. 

With statutory construction, the cardinal rule is to ascertain and give effect to the legislature's intent.  Courts are to give the statute's words their plain and commonly understood meanings.  
Lucas v. Taylor
, 349 Ill. App. 3d 995, 999, 812 N.E.2d 72, 76 (2004).
  However, those words cannot be viewed in isolation but must be interpreted in light of the statute's other relevant provisions.  
Raintree Homes, Inc. v. Village of Long Grove
, 209 Ill. 2d 248, 255-56, 807 N.E.2d 439, 444 (2004).
  
When a statute's language is clear and unambiguous, it will be given effect without resort to the other statutory-construction tools.  
Lucas
, 349 Ill. App. 3d at 999, 812 N.E.2d at 76.     

 In setting forth the county clerk's duty to furnish voter-registration information in section 4-8 of the Election Code (10 ILCS 5/4-8 (West Supp. 2001)), the legislature used mandatory language such as "shall be furnished" and "shall include."  This language is also utilized in section 207.110(e) of Title 26 of the Illinois Administrative Code (26 Ill. Adm. Code §207.110(e) (Conway Greene CD-ROM March 2002))
, which
 states "[t]elephone numbers 
must
 
be
 
furnished
 for a voter registered after May 1, 1990, and for all registered voters, irrespective of date of registration, if available."  (Emphasis added.)  Subsections (c) and (d) of the section also use the "must be furnished" language.  26 Ill. Adm. Code §§207.110(c), (d) (Conway Greene CD-ROM March 2002).  However, 
subsection (g) provides "[e]lection authorities 
may
, 
but
 
need
 
not
, also furnish" the following:  (1) registration date, (2) physical impairment indicator, (3) naturalization indicator, (4) social security number, (5) driver's license number, and (6) voting history for elections other than primary elections.  (Emphasis added.)  26 Ill. Adm. Code §207.110(g) (Conway Greene CD-ROM March 2002
).

Moreover, a person does not have to provide his or her telephone number to register to vote in Illinois.  Section 4-8 of the Election Code (10 ILCS 5/4-8 (West Supp. 2001)) does not include an applicant's telephone number in the list of items required for identification of the applicant, and both section 4-8.03 and the former version of 4-33(a) (10 ILCS 5/4-8.03 (West 2000); 10 ILCS 5/4-33(a) (West 2002)) state a registration-record card must contain spaces for the information required under section 4-8 and a box "for the applicant's telephone number, if available."  See also 26 Ill. Adm. Code §216 exhibit A (Conway Greene CD-ROM March 2002) (listing the term "optional" next to "telephone number" on the Illinois voter-registration application).
  

Thus, considering the "if any" language in the context of the other provisions of the Election Code,
 we find the "if any" language refers to whether the voter provided his or her telephone number.  If the voter did not provide a phone number, then there would not be "any" telephone number for the county clerk to provide to the Elections Board.

Here, Shelden elected to place voters' telephone numbers into computer files, which constitutes data-processing information containing voting-registration information.  Thus, under section 4-8 of the Election Code (10 ILCS 5/4-8 (West Supp. 2001)), Shelden, as the county clerk of Champaign County, must provide the Elections Board with a copy of that information.  The fact the voter's telephone number is not contained in a voter-registration file as referred to in section 4-33 of the Election Code (10 ILCS 5/4-33 (West 2002)) does not alter our conclusion.  Section 4-8 requires the county clerk to furnish "[u]pdated copies of computer tapes or computer discs or other electronic data[-]processing information containing voter[-]registration information" and provides no exemption for such information contained outside the voter-registration file.  10 ILCS 5/4-8 (West Supp. 2001).  Moreover, the record indicates Shelden, as county clerk, is the election authority in Champaign County and has control of the voter-registration information in that county.  Accordingly, we find the Elections Board is entitled to 
mandamus
 relief as to the computer files containing voters' telephone numbers that are not included in computer-based voter-registration files.   

B. Telephone Numbers on Paper Records

The Elections Board asserts that, if Shelden is obligated to furnish voters' telephone numbers to it, whether those numbers are in a computer file or on paper is irrelevant.  We disagree.

While section 4-8 of the Election Code (10 ILCS 5/4-8 (West Supp. 2001)) requires county clerks to furnish copies of electronic data-processing information containing voter-registration information, it does not require the furnishment of voter-registration information contained on paper records.  Additionally, section 207.110 of Title 26 of the Illinois Administrative Code
 only addresses the furnishment of "[e]lectronic data[-]processing information containing voter[-]registration information."  26 Ill. Adm. Code §207.110(b) (Conway Greene CD-ROM March 2002)
.
  Thus, we find no clear duty on Shelden to provide the Elections Board with telephone numbers that are only contained on paper cards.

Further, we do not find a clear duty on Shelden to include voters' telephone numbers in his computer-based registration files.  Section 4-33 of the Election Code, which addresses the computerization of voter records, expressly states the adoption of a computer-based voter-registration file system is in the election authority's discretion.  10 ILCS 5/4-33(b) (West 2002).  Moreover, despite characterizing the electronic file as the master file, the only item the statute requires a computer-based voter-registration file to contain is "a computer-stored image of the signature of each voter."  10 ILCS 5/4-33(b) (West 2002).  Section 4-33(b) also provides "[t]he computer-based voter-registration file 
may
 
be
 used for all purposes for which the original registration cards are to be used."  (Emphasis added.)  10 ILCS 5/4-33(b) (West 2002).  Additionally, section 207.110 of Title 26 of the Illinois Administrative Code (26 Ill. Adm. Code §207.110 (Conway Greene CD-ROM March 2002)
) 
does not require an election authority to enter certain voter-registration information onto a computerized system, and despite section 4-8's goal of uniformity throughout the State in the electronic data processing of voter information (10 ILCS 5/4-8 (West Supp. 2001)), no other regulation addresses what voter-registration information must be put onto a computer if a computer-based system is adopted. 

 Accordingly, we find no clear duty on Shelden to provide voters' telephone numbers that are only contained on paper records cards, and thus the trial court properly denied 
mandamus
 relief as to those records.

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment as to voters' telephone numbers contained on computer files but not included in a voter-registration file and affirm the court's judgment in all other respects.

Affirmed in part; reversed in part.

APPLETON and McCULLOUGH, JJ., concur.